# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

BRIAN FIELDS,

*Plaintiff*,

v.

DSM-FIRMENICH AG, FIRMENICH INTERNATIONAL SA, FIRMENICH INC., AGILEX FLAVORS & FRAGRANCES, INC., GIVAUDAN SA, GIVAUDAN FRAGRANCES CORPORATION, CUSTOM ESSENCE LLC, SYMRISE AG, SYMRISE INC., SYMRISE US LLC, INTERNATIONAL FLAVORS & FRAGRANCES INC.,

*Defendants*.

Civil Action No.: 2:26-cv-00852 (WJM) (JSA)

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Liza M. Walsh
Jessica K. Formichella
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law

Michael E. Hamburger
**FBT GIBBONS LLP**
One Gateway Center
Newark, NJ 07102
(973) 596-4500
mhamburger@fbtgibbons.com

Robert Milne (*pro hac vice* forthcoming)
Martin M. Toto
William H. Bave, III (*pro hac vice*)
Gina M. Chiappetta (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
rmilne@whitecase.com
mtoto@whitecase.com
william.bave@whitecase.com
gina.chiappetta@whitecase.com

*Attorneys for Defendants Symrise AG, Symrise Inc., and Symrise US LLC*

Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
(215) 979-1947
spmcconnell@duanemorris.com
sckulik@duanemorris.com

D. Jarrett Arp (*pro hac vice* forthcoming)
Mari Grace (*pro hac vice* pending)
**DAVIS POLK & WARDWELL LLP**
1050 17th Street, NW
Washington, D.C. 20036
(202) 962-7020
jarrett.arp@davispolk.com
mari.grace@davispolk.com

Arthur J. Burke (*pro hac vice* pending)
Peter M. Bozzo
Christopher Lynch (*pro hac vice* forthcoming)

Andrew C. Finch (*pro hac vice* pending)
Michael A. Paskin (*pro hac vice* pending)
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
afinch@cravath.com
mpaskin@cravath.com

*Attorneys for Defendants Givaudan SA, Givaudan Fragrances Corporation, and Custom Essence LLC*

Boris Bershteyn (*pro hac vice* forthcoming)
Tansy Woan
Evan Levicoff (*pro hac vice* forthcoming)
Thomas J. Smith (*pro hac vice* forthcoming)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
(212) 735-3000
Boris.Bershteyn@skadden.com
Tansy.Woan@skadden.com
Evan.Levicoff@skadden.com
Thomas.Smith@skadden.com

*Attorneys for Defendant International Flavors & Fragrances Inc.*

**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4352
arthur.burke@davispolk.com
peter.bozzo@davispolk.com
christopher.lynch@davispolk.com

*Attorneys for Defendants Firmenich SA,*
*Firmenich Inc., and Agilex Flavors &*
*Fragrances, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ..................................................................................................4

     A.     The Manufacture and Sale of Fragrances ..................................4

     B.     The Alleged Conspiracy ...............................................................5

     C.     Government Inquiries ....................................................................7

     D.     Plaintiff's Claims and Proposed Class .......................................7

     E.     The Consolidated Actions ...........................................................8

ARGUMENT ....................................................................................................10

I.     Plaintiff Lacks Standing To Recover Damages Under Section 4 of the Clayton Act .................................................................................................11

     A.     *Illinois Brick* Bars Plaintiff's Damages Claim ...................11

     B.     Plaintiff's Efforts to Evade *Illinois Brick* Fail .................14

II.     The FTAIA Requires Dismissal Because the Claim Is Based Entirely on Alleged Foreign Conduct ............................................................................20

     A.     The FTAIA Bars Plaintiff's Complaint Because His Claim Is Based Exclusively on Goods Sold in Foreign Commerce ..................20

     B.     Plaintiff Does Not—and Cannot—Plausibly Allege That Defendants Were Involved in Import Commerce ............................22

     C.     The Domestic Effects Exception to the FTAIA Does Not Apply .......23

III.     The Complaint Fails to Allege an Unreasonable Restraint of Trade Under Either the *Per Se* Rule or the Rule of Reason ..................................31

     A.     The *Per Se* Rule Does Not Apply to the Alleged Agreement ............31

     B.     Plaintiff Fails to State a Rule of Reason Claim ................................35

IV.     Plaintiff Fails to Plead the Existence of a Section 1 Agreement ..................37

CONCLUSION .................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animal Sci. Prods. v. China Minmetals Corp.*,
654 F.3d 462 (3d Cir. 2011) ..................................................................22, 27

*Apple Inc. v. Pepper*,
587 U.S. 273 (2019)................................................................................12, 13, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................10, 23, 35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................10

*Black Box Corp. v. Avaya, Inc.*,
No. 07-6161, 2008 WL 4117844 (D.N.J. Aug. 29, 2008)..................................34

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
441 U.S. 1 (1979)....................................................................................32

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ....................................................................40

*Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*,
227 F.3d 62 (3d Cir. 2000) ......................................................................22

*Dimartino v. BMW of N. Am., LLC*,
No. 15-8447 (WJM), 2016 WL 4260788 (D.N.J. Aug. 11, 2016) ....................16

*Dorsett v. N.J. State Police*,
No. 04-5652, 2007 WL 556890 (D.N.J. Feb. 15, 2007).....................................7

*Duran v. Sephora USA, Inc.*,
No. 17-01261, 2017 WL 3453362 (N.D. Cal. Aug. 11, 2017)..........................15

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004)................................................................................20

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
392 U.S. 481 (1968)................................................................................19

*Hu v. BMW of N. Am., LLC*,
　No. 18-4363, 2021 WL 346974 (D.N.J. Feb. 2, 2021).................................13, 16

*Illinois Brick Co. v. Illinois*,
　431 U.S. 720 (1977)...............................................................................passim

*In re Allergan ERISA Litig.*,
　975 F.3d 348 (3d Cir. 2020) ...............................................................35

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
　No. 07-5944, 2018 WL 659084 (N.D. Cal. Feb. 1, 2018)................................27

*In re Concrete & Cement Additives Antitrust Litigation*,
　No. 24-MD-3097, 2025 WL 1755193 (S.D.N.Y. June 25, 2025) .....................39

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
　546 F.3d 981 (9th Cir. 2008) .........................................................25, 31

*In re Fragrance Direct Purchaser Antitrust Litig.*,
　No. 23-2174, 2025 WL 579639 (D.N.J. Feb. 21, 2025)............................passim

*In Re Graphite Electrodes Antitrust Litig.*,
　No. 00-5414, 2007 WL 137684 (E.D. Pa. Jan. 16, 2007) .................................31

*In re Hydrogen Peroxide Antitrust Litig.*,
　702 F. Supp. 2d 548 (E.D. Pa. 2010)...................................................22, 29, 30

*In re Ins. Brokerage Antitrust Litig.*,
　618 F.3d 300 (3d Cir. 2010) .......................................................................10, 37

*In re Intel Corp. Microprocessor Antitrust Litig.*,
　452 F. Supp. 2d 555 (D. Del. 2006).......................................................23, 24, 25

*In re Mushroom Direct Purchaser Antitrust Litig.*,
　No. 06-0620, 2015 WL 6322383 (E.D. Pa. May 26, 2015) .............................34

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
　626 F.3d 1327 (11th Cir. 2010) .......................................................................40

*Kansas v. UtiliCorp United, Inc.*,
　497 U.S. 199 (1990)..............................................................................12, 15

iii

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ................................................................................................32

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................................18

*Link v. Mercedes-Benz of N. Am., Inc.*,
  788 F.2d 918 (3d Cir. 1986) ...................................................................................13

*Lotes Co. Ltd. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014) ...................................................................................31

*McCarthy v. Recordex Serv., Inc.*,
  80 F.3d 842 (3d Cir. 1996) .....................................................................................12

*Merican, Inc. v. Caterpillar Tractor Co.*,
  713 F.2d 958 (3d Cir. 1983) .............................................................................16, 18

*Minn-Chem, Inc. v. Agrium, Inc.*,
  683 F.3d 845 (7th Cir. 2012) ..................................................................................26

*Motorola Mobility LLC v. AU Optronics Corp.*,
  775 F.3d 816 (7th Cir. 2015) ...........................................................................passim

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) ................................................................................................36

*Pyatkova v. Motorcars*,
  No. 15-3263, 2016 WL 674862 (D.N.J. Feb. 2, 2016) ..........................................10

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ...................................................................................36

*Robinson v. Jackson Hewitt, Inc.*,
  No. 19-9066, 2019 WL 5617512 (D.N.J. Oct. 31, 2019) .......................................31

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ...................................................................................38

*Spitz v. Medco Health Sols., Inc.*,
  No. 10-1159, 2010 WL 4615233 (D.N.J. Nov. 3, 2010) ........................................26

iv

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997)........................................................................................31

*Texaco Inc. v. Dagher*,
  547 U.S. 1 (2006)...................................................................................32, 37

*Turicentro S.A. v. Am. Airlines Inc.*,
  303 F.3d 293 (3d Cir. 2002) ......................................................................22

*United States v. Brewbaker*,
  87 F.4th 563 (4th Cir. 2023), *cert. denied*, 145 S. Ct. 544 (2024) .....................33

*United States v. LSL Biotechnologies*,
  No. 00-529, 2002 WL 31115336 (D. Ariz. Mar. 28, 2002), *amended*
  (May 23, 2002), *aff'd*, 379 F.3d 672 (9th Cir. 2004) .............................26, 27, 28

*Warren Gen. Hosp. v. Amgen Inc.*,
  643 F.3d 77 (3d Cir. 2011) ....................................................................16, 18

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Mktg. Coop., Inc.*,
  89 F.4th 430 (3d Cir. 2023) ..................................................................33, 34, 35

**Statutes & Rules**

15 U.S.C. § 6a ..........................................................................................20

15 U.S.C. § 15(a) .......................................................................................11

Section 4 of the Clayton Act............................................................passim

Fed. R. Evid. 201(b).........................................................................................7

Foreign Trade Antitrust Improvements Act....................................................passim

Section 1 of the Sherman Act .......................................................passim

## PRELIMINARY STATEMENT

Plaintiff Brian Fields's Complaint—which comes nearly three years after this Court consolidated three other putative class actions against the same Defendants based on the same alleged conduct[1]—rehashes bare-bones, conclusory allegations of a price-fixing conspiracy that hinge on little more than the existence of government inquiries (notably by the U.S. Department of Justice, which has since announced the closure of its investigation), ambiguous financial data, and ordinary, decontextualized price changes and statements of business performance.  Based on these scant allegations, Plaintiff—an individual who purportedly purchased a bottle of foreign-manufactured Dior perfume from Sephora—seeks to bring a federal antitrust damages claim for price fixing by attempting to stand in the shoes of the foreign entity (Dior) that allegedly purchased fragrance ingredients directly from Defendants.  Even assuming Plaintiff—who concedes he is an *indirect* purchaser— could plausibly plead a conspiracy (and he cannot), his claim is plainly foreclosed by well-established Supreme Court precedent, which holds that only *direct purchasers* may recover antitrust damages under Section 4 of the Clayton Act. Plaintiff's claim should accordingly be dismissed for multiple reasons.

---

[1] The consolidated actions were originally filed as 15 individual complaints by direct purchasers, indirect purchasers, and end-user purchasers.  These actions were ultimately consolidated into three dockets (one for each purchaser group) and are currently pending before this Court.

*First*, Plaintiff lacks standing to seek damages for an antitrust violation under Section 4 of the Clayton Act because he is not a direct purchaser of the Defendants' Fragrances. Instead, Plaintiff asks this Court to carve out a new exception to binding case law that would allow the "first U.S. purchaser" in a distribution chain to seek damages when the direct purchaser is a foreign entity that lacks standing to enforce the U.S. antitrust laws. Courts regularly reject efforts by indirect purchasers to carve out case-specific exceptions to standing, and there is no basis for this Court to deviate from precedent here and create an exception that has never been recognized in the nearly 50 years since the Supreme Court prohibited federal indirect purchaser damages claims in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Because he alleges only a federal antitrust claim, the fact that Plaintiff is admittedly not a direct purchaser ends the inquiry and warrants dismissal.

*Second*, as Plaintiff's own allegations make clear, his claims are independently barred under the Foreign Trade Antitrust Improvements Act (the "FTAIA"), which limits the extraterritorial reach of the Sherman Act, because he purchased from a foreign entity that suffered its alleged injuries outside the United States. Plaintiff's attempt to circumvent the FTAIA by claiming to stand in the shoes of the foreign direct purchaser should be rejected, as other courts have recognized.

2

*Third*, Plaintiff fails to plausibly allege an unreasonable restraint of trade under either the *per se* rule or rule of reason. Notably, Plaintiff asserts only that the purported agreement is *per se* unlawful and does not even attempt to meet the rule of reason's requirements. As to the *per se* rule, he fails to plausibly allege that the purported agreement falls within the narrow universe of recognized *per se* violations—manifestly anticompetitive restraints that tend to categorically restrict competition and lack any redeeming value. To the contrary, Plaintiff alleges that Defendants had a complex web of competitive and collaborative relationships that involved not just competing with each other in the sale of fragrances to third parties (a horizontal relationship) but also buying fragrances from and selling fragrances to each other (a vertical relationship). The Third Circuit has held that the *per se* rule is inapplicable to such hybrid relationships, which contain both horizontal and vertical relationships among defendants because they require multiple levels of cooperation to effectuate an alleged price-fixing agreement and cannot be considered facially anticompetitive. The alleged restraint should therefore be evaluated under the rule of reason, but the Complaint is devoid of factual allegations necessary to state a claim under the rule of reason.

*Fourth*, Plaintiff fails to plausibly allege an agreement among Defendants, as required for any conspiracy claim under federal antitrust law. Even though this Court permitted conspiracy claims to go forward in the consolidated putative class

3

actions brought against the Defendants, Plaintiff's allegations in this Complaint are far more conclusory than the claims in the consolidated actions and cannot withstand a motion to dismiss.  Additionally, to the extent Plaintiff relies on the existence of government investigations to support his claim of conspiracy, his allegations are materially weaker now that the U.S. Department of Justice has closed its inquiry as to all Defendants—without bringing any enforcement action.

For these reasons, Plaintiff's Complaint should be dismissed in full.[2]

## BACKGROUND

### A.    The Manufacture and Sale of Fragrances

Defendants[3] manufacture and sell aromatic ingredients and compounds, which the Complaint collectively calls "Fragrances."  These Fragrances provide distinctive scents to the consumer goods into which they are incorporated, such as perfumes, cosmetics, household cleaning products, and soaps.  The Complaint calls these types of consumer goods "Finished Fragrance Products."  Compl. ¶¶ 1-2  (Jan.

---

[2] Defendants' failure to contest personal jurisdiction in this motion does not constitute a waiver of personal jurisdiction.  Defendants expressly reserve all arguments and defenses relating to personal jurisdiction.  *See* Stipulation and Order, ECF No. 25 (Apr. 21, 2026).

[3] Plaintiff names as Defendants Firmenich SA, Firmenich Inc., and Agilex Flavors & Fragrances Inc. (collectively, "DSM"); Givaudan SA, Givaudan Fragrances Corporation, and Custom Essence LLC (collectively, "Givaudan"); Symrise AG, Symrise Inc., and Symrise US LLC (collectively, "Symrise"); and International Flavors and Fragrances Inc. ("IFF").  *See* Complaint, ECF No. 1 (Jan. 27, 2026); Stipulation and Order, ECF No. 25 (Apr. 21, 2026) (dismissing Defendants DSM-Firmenich AG and Firmenich International SA without prejudice).

27, 2026, ECF No. 1) ("Complaint").  Defendants sell directly to third-party manufacturers, as well as to other Defendants.  *Id.* ¶ 30.

Plaintiff is not a customer of Defendants and did not purchase anything from Defendants, as he concedes.  *Id.* ¶ 4.  Rather, Plaintiff alleges that he purchased a Finished Fragrance Product—a bottle of Dior Sauvage—from Sephora USA, Inc. ("Sephora USA").  *Id*. ¶ 7.  Dior manufactured the Sauvage at a factory in France, using Fragrances that Dior purchased from "one or more Defendants," and "sold Sauvage to Fields through Sephora."  *Id*.  However, Plaintiff alleges that both Sephora and Dior are wholly owned subsidiaries of LVMH Moët Hennessy Louis Vuitton SA ("LVMH"), a multinational conglomerate headquartered in France, and as such they lack any standing in the United States.  *Id.* (referring to all three as "French companies").  Because the actual direct purchaser is a foreign entity that lacks standing, and despite Plaintiff's concession that he is not a direct purchaser, Plaintiff seeks to establish standing by characterizing himself as "the first U.S. purchaser." *Id.*

### B.    The Alleged Conspiracy

According to Plaintiff, "[f]rom at least January 1, 2018," Defendants agreed to fix "the prices they charged for Fragrances throughout the world, including in the United States."  *Id.* ¶¶ 79-80.  Plaintiff alleges that Defendants "coordinated their pricing policies with one another, allocated certain customers to specific Defendants,

and imposed supply constraints for Fragrances." *Id.* ¶ 3.  Beyond these conclusory allegations, however, Plaintiff does not allege who formed this agreement, where it was formed, or what any Defendant purportedly agreed to with respect to the alleged price increases.  Nor are there any additional allegations related to purported customer allocation or the constraint of supply beyond one reference to comments by the General Court of the European Union. *Id.* ¶ 51.

As to Plaintiff's allegations of coordinated price increases—and in the absence of any allegations regarding Defendants' actual prices—Plaintiff alleges "parallel price increases" based on public statements in SEC filings, earnings calls, and press releases from January 2018 to March 2023, in which Defendants attributed some price increases to increases in the costs of raw materials and other inputs. *Id.* ¶ 41.  Since price increases based on increases in input costs and other inflationary pressures are perfectly legal and common, Plaintiff suggests "[o]n information and belief" that these explanations "were false and pretextual," *id.* ¶ 45, without any factual allegations to support his claim.  Plaintiff further asserts that "public statements," *id.* ¶ 53, and inter-Defendant "sales of raw materials" served as "monitoring mechanisms" and "allocation structures," *id.* ¶¶ 53-55, for the alleged conspiracy, but Plaintiff includes no factual allegations supporting the claim that the alleged public statements and inter-Defendant sales were used for this purpose.

### C.     Government Inquiries

Plaintiff alleges that two separate government investigations targeted Defendants, one by the European Commission (the "EC") and one by the U.S. Department of Justice (the "DOJ").  Compl. ¶¶ 34, 37.  In connection with the EC investigation, Plaintiff alleges that on March 7, 2023, the EC carried out unannounced inspections at the premises of companies involved in manufacturing Fragrances and at the International Fragrance Association ("IFRA").  *Id.* ¶¶ 34, 49. The EC allegedly had unspecified "information" and "evidence" that prompted its antitrust investigation.  *See, e.g., id.* ¶¶ 35, 39-40, 49, 51.

In February 2026, however, the DOJ announced that it had closed its nearly three-year investigation, as set forth in a filing before this Court in the consolidated fragrance antitrust actions described further below.  *See* United States' Motion to Withdraw Intervention, *In re Fragrance Direct Purchaser Antitrust Litig.*, No. 23-02174 (D.N.J. filed Feb. 9, 2026), ECF No. 260.[4]  The DOJ brought no charges against Defendants (or any company) based on its lengthy investigation.

### D.     Plaintiff's Claims and Proposed Class

Plaintiff filed this Complaint on January 27, 2026, asserting a single *per se*

---

[4] The Court may take judicial notice of this filing because it is a matter of public record and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Dorsett v. N.J. State Police*, No. 04-5652, 2007 WL 556890, at *2 & n.4 (D.N.J. Feb. 15, 2007) (Martini, J.) (taking judicial notice of court filings in another case).

price-fixing claim under Sections 1 and 3 of the Sherman Act.  Compl. ¶¶ 78-85. Under Section 4 of the Clayton Act, Plaintiff seeks treble damages on behalf of himself and others who allegedly "purchased a Finished Fragrance Product that incorporated Fragrances from one or more Defendants in the United States" from either a foreign seller or a U.S. seller that acquired the Finished Fragrance Product outside the United States from a foreign entity affiliated with the U.S. seller or Defendants. *Id.* ¶¶ 67, 85.  Plaintiff asserts that the injuries purportedly experienced by these foreign purchasers, based on foreign transactions, are "beyond the reach of federal law for the purposes of seeking damages." *Id.* ¶ 7.  Plaintiff theorizes that he and the putative class members have standing because overcharges purportedly paid by foreign entities in foreign transactions were allegedly passed through to Plaintiff and other putative class members, such that the conspiracy purportedly "exerted a direct, substantial, and reasonably foreseeable effect on U.S. commerce." *Id.* ¶ 63; *see also id.* ¶¶ 62, 64.

### E.     The Consolidated Actions

Nearly three years before this case, the Court consolidated into three separate dockets other class action complaints that Plaintiff has identified as related actions. These three dockets are for claims by alleged direct purchasers of Fragrances, indirect purchasers of Fragrances, and end users of Finished Fragrance Products. *See In re Fragrance Direct Purchaser Antitrust Litig.*, No. 23-2174 (D.N.J.); *In re*

8

*Fragrance Indirect Purchaser Antitrust Litig.*, No. 23-3249 (D.N.J.); *In re Fragrance End-User Plaintiff Antitrust Litig.*, No. 23-16127 (D.N.J.) (collectively, the "Consolidated Actions").

On February 21, 2025, the Court granted in part and denied in part Defendants' Rule 12(b)(6) motion to dismiss the Consolidated Actions. *See In re Fragrance Direct Purchaser Antitrust Litig.*, No. 23-2174, 2025 WL 579639, at *1 (D.N.J. Feb. 21, 2025) (Martini, J.). The Court noted that, with respect to the Consolidated Actions' common conspiracy theory, Defendants "raise[d] substantial and meaningful questions" about the sufficiency of plaintiffs' allegations, but allowed plaintiffs' claims to proceed to discovery. *Id.* at *9. In so doing, the Court held that "the existence of the Government Investigations" was "one among . . . several plus factors weighing against dismissal at the pleading stage." *Id*.

Unlike Plaintiff, the indirect purchaser and end-user plaintiffs in the Consolidated Actions do not seek damages under the federal antitrust laws. *See id.* at *14. Notably, in ruling on the motion to dismiss, the Court recognized that "[i]t is blackletter law that indirect purchaser plaintiffs are barred from pursuing damages actions under the federal antitrust laws," but considered their standing to assert damages claims under various state laws that allow indirect purchasers to sue. *Id.* at *14.

9

## **ARGUMENT**

To survive a motion to dismiss, a complaint must rise "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), by providing enough "factual content" to state a claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5] "[L]abels and conclusions" do not suffice, *Twombly*, 550 U.S. at 555, nor do "factual claims that are internally inconsistent," *Pyatkova v. Motorcars*, No. 15-3263, 2016 WL 674862, at *2 (D.N.J. Feb. 2, 2016). In antitrust cases in particular, courts require "some specificity in pleading" because "defendant[s] should not be put to the expense of big-case discovery on the basis of a threadbare claim." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010).

Here, several outcome-determinative flaws in the allegations require dismissal of Plaintiff's Sherman Act claim. *First*, Plaintiff lacks standing to recover damages under Section 4 of the Clayton Act because he is an indirect purchaser of Fragrances—a fact he readily admits. Plaintiff's claim is therefore barred under the well-established black-letter law of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). *Second*, Plaintiff's claim is barred under the FTAIA because it is based on sales of an allegedly price-fixed product that occurred entirely outside of the United States, did not involve import trade or import commerce into the United States, and

---

[5] Unless otherwise noted, all internal quotation marks, citations, and alterations are omitted.

did not have a direct, substantial, or reasonably foreseeable effect on domestic commerce.  *Third*, Plaintiff fails to plausibly allege an unreasonable restraint on trade under either the *per se* rule or rule of reason.  *Fourth*, Plaintiff fails to plausibly allege an agreement, as required to state an antitrust conspiracy claim.

## I.    PLAINTIFF LACKS STANDING TO RECOVER DAMAGES UNDER SECTION 4 OF THE CLAYTON ACT

The Complaint should be dismissed because Plaintiff, as an indirect purchaser, lacks standing to recover damages pursuant to Section 4 of the Clayton Act under the well-established direct-purchaser rule, and no exception to that rule applies here.

### A.    *Illinois Brick* Bars Plaintiff's Damages Claim

Plaintiff's claim is barred by the bright-line rule established in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that only the "overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of [Section 4 of the Clayton Act]."  431 U.S. at 726-29 (quoting 15 U.S.C. § 15(a)) (holding that a state could not seek damages for overcharges from a concrete block manufacturer because the state purchased the block "two separate levels [down] in the chain of distribution," not directly from the manufacturer).  As the Supreme Court explained, allowing both direct and indirect purchasers to recover damages "would create a serious risk of multiple liability for defendants" and saddle courts with the "evidentiary complexities and uncertainties involved in" calculating "how much of the

11

overcharge was passed on" to each purchaser at each level in the distribution chain. *Id.* at 730-33. The "antitrust laws will be more effectively enforced," the Court concluded, "by concentrating the full recovery for the overcharge in the direct purchasers rather than by allowing every plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it." *Id.* at 735.

*Illinois Brick* thus "established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019) (citing *Illinois Brick*, 431 U.S. at 746) (emphasis in original). Indeed, this Court recognized as much in the Consolidated Actions, explaining that "[i]t is blackletter law that indirect purchaser plaintiffs are barred from pursuing damages actions under the federal antitrust laws." *In re Fragrance Direct Purchaser Antitrust Litig.*, 2025 WL 579639, at *14.

Applying this bright-line rule, courts regularly reject indirect purchaser damages claims under *Illinois Brick*. *See, e.g.*, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208-11 (1990) (affirming the direct-purchaser rule even where Defendants "pass on 100 percent" of the alleged unlawful overcharges); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 851-52 (3d Cir. 1996) (applying *Illinois Brick*'s "absolute bar" to preclude a suit by clients whose attorneys had directly purchased copies of the clients' records from photocopying services); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 929-33 (3d Cir. 1986) (same, where customers of car dealerships

12

alleged that Mercedes-Benz had forced its dealers to purchase parts for repairing vehicles at fixed prices); *Hu v. BMW of N. Am., LLC*, No. 18-4363, 2021 WL 346974, at *4 (D.N.J. Feb. 2, 2021) ("Plaintiffs acknowledge that their BMWs were all purchased from dealerships or third parties.    That makes them indirect purchasers. . . . *Illinois Brick* thus bars their claim.").

The same result should follow here because Plaintiff expressly concedes that he "did not purchase directly from Defendants."  Compl. ¶ 4; *see also id.* ¶¶ 7, 61. Instead, Plaintiff alleges that he purchased a Finished Fragrance Product "directly from Sephora USA, Inc.," and that the product was manufactured by Dior using "Fragrances that Dior purchased directly from one or more Defendants."  *Id.* ¶ 7; *see also id.* ¶¶ 4, 61.  Plaintiff's own allegations thus establish that he is an indirect purchaser consumer at the bottom of a vertical distribution chain who is attempting to sue manufacturers (Defendants) at least two steps removed at the top of the chain. Based on those allegations alone, *Illinois Brick* unequivocally bars Plaintiff's damages claim.  *See Apple*, 587 U.S. at 280 ("[I]f manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A. . . . That is the straightforward rule of *Illinois Brick*.").

Finally, although the Supreme Court has contemplated just two narrow exceptions to the direct-purchaser rule, neither applies here.  *First*, Plaintiff does not allege that he has a pre-existing, fixed quantity, cost-plus contract with Sephora,

13

Dior, or LVMH.  *See Illinois Brick*, 431 U.S. at 724 n.2, 735-36 (recognizing a potential exception when the direct purchaser has a "pre-existing cost-plus contract" with the indirect purchaser).  *Second*, Plaintiff does not allege that he "own[s] or control[s]" Sephora, Dior, or LVMH.  *See id*. at 736 n.16 (suggesting "the pass-on defense might be permitted . . . where the direct purchaser is owned or controlled by its customer").  Plaintiff's failure to allege either recognized exception to *Illinois Brick* requires dismissal, and no further inquiry is required.[6]

### B.    Plaintiff's Efforts to Evade *Illinois Brick* Fail

This Court should also reject Plaintiff's invitation to create a new exception to the direct-purchaser rule of *Illinois Brick*.  Seeking to end-run around *Illinois Brick*, Plaintiff asserts that if a direct purchaser is a "foreign entity that suffered its injuries outside the United States and therefore lacks standing to bring a Section 4 claim for damages," then the closest *indirect* purchaser down the distribution chain who suffered harm in the United States should be excepted from the direct-purchaser rule and allowed to sue for damages.  *See* Compl. ¶¶ 4, 65-66.  Plaintiff then brands himself one such "first *U.S.* purchaser."  *Id*. ¶ 7 (emphasis added).[7]

---

[6] Nor does the so-called "co-conspirator" exception, to the extent it exists, apply because Plaintiff does not allege that Sephora, Dior, or LVMH colluded with Defendants to overcharge him.

[7] Even Plaintiff's contention that he is the "first U.S. purchaser" is dubious because he alleges that he purchased a Finished Fragrance Product from Sephora USA—not Dior, the perfume manufacturer.  While he attempts to blur the distinction between Dior and Sephora USA by characterizing them as affiliates that are part of

14

The Supreme Court has repeatedly issued clear directives against crafting additional exceptions to the direct-purchaser rule:  Lower courts may not "carve out exceptions" because "[t]he possibility of allowing an exception, even in rather meritorious circumstances, would undermine the rule." *UtiliCorp*, 497 U.S. at 216. "[T]he bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois Brick* 'apply with equal force' in every individual case. We should not engage in 'an unwarranted and counterproductive exercise to litigate a series of exceptions.'" *Apple*, 587 U.S. at 285 (quoting *UtiliCorp*, 497 U.S. at 216). Consistent with that directive, this Court and others in this Circuit have repeatedly declined to consider case-by-case exceptions to the direct-purchaser rule. *See, e.g.*, *Dimartino v. BMW of N. Am., LLC*, No. 15-8447 (WJM), 2016 WL 4260788, at *4 (D.N.J. Aug. 11, 2016) (Martini, J.) (declining to exempt plaintiff from direct-purchaser rule because plaintiff "d[id] not point to any of the limited exceptions that have been recognized by the Supreme Court or the Third Circuit and its sister

---

a single enterprise, this improperly ignores their corporate separateness. *See Duran v. Sephora USA, Inc.*, No. 17-01261, 2017 WL 3453362, at *3 (N.D. Cal. Aug. 11, 2017) (noting that "Sephora [USA, Inc. is] a corporation incorporated in the state of Delaware and headquartered in San Francisco, California."); *see also Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 820 (7th Cir. 2015) (Posner, J.) ("Motorola wants us to treat it and all of its foreign subsidiaries as a single integrated enterprise, as if its subsidiaries were divisions rather than foreign corporations. But American law does not collapse parents and subsidiaries (or sister corporations) in that way.").

15

circuits"); *see also Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 91-92 (3d Cir. 2011) (rejecting plaintiff's argument that *Illinois Brick* "confer[s] standing on the first *harmed* direct purchaser, not just the direct purchaser" because "direct purchaser status" is not linked to "injury calculations and determinations") (emphasis in original); *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 966 (3d Cir. 1983) (reversing district court's recognition of an exception to *Illinois Brick* where indirect purchasers "were the 'direct targets' of an unlawful conspiracy"); *Hu*, 2021 WL 346974, at *4 (declining to recognize exception even where "there is no dueling claim to a common fund"—that is, where direct and indirect purchasers' claims "would not overlap").

In the nearly 50 years since *Illinois Brick*, neither the Supreme Court nor the Third Circuit has ever recognized a "first U.S. purchaser" exception.  Indeed, the Seventh Circuit considered and rejected an almost identical argument—made by some of the same counsel now representing Plaintiff here—in *Motorola*.  In that case, plaintiff Motorola (a U.S. entity) sought damages for price-fixed LCD panels that its foreign subsidiaries purchased from defendant manufacturers outside the United States and incorporated into cellphones before selling those cellphones to Motorola for resale in the United States.  775 F.3d at 817.  The district court ruled that the FTAIA—discussed *infra* in Section II—barred Motorola's claims because the alleged overcharges occurred entirely in foreign commerce and, therefore,

16

granted summary judgment against Motorola on those claims. *See id*. at 818-20, 827.

On appeal, in addition to contesting the district court's FTAIA ruling, Motorola argued for a general exception to *Illinois Brick* that would allow an indirect U.S. purchaser to sue under the U.S. antitrust laws when the direct purchasers are foreign entities that are barred from suing for an unrelated reason (*i.e.*, the FTAIA). *See* Appellant's Opening Brief at 43-44, *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003 (7th Cir. Aug. 29, 2014), ECF No. 86 (arguing that the application of *Illinois Brick* would mean that "no U.S. plaintiff can sue to redress the harm done to the U.S. economy"). The Seventh Circuit rejected that argument and refused to recognize another exception to the direct-purchaser rule because doing so would "nullify the doctrine of *Illinois Brick*." *Motorola*, 775 F.3d at 822-23; *see also id.* at 820 (affirming dismissal under the FTAIA because "U.S. antitrust laws are not to be used for injury to foreign customers" and noting foreign customers may seek redress under the applicable foreign laws).

Plaintiff's "first U.S. purchaser" theory would do exactly what the *Motorola* court rejected: redefine the scope of the private antitrust damages action under Section 4 by carving out a new exception to the bright-line direct-purchaser rule. It is irrelevant to the question of standing that, according to Plaintiff, "this Complaint is [Plaintiff's] only path to compensation" for any alleged injury, Compl. ¶ 5,

17

because Section 4 does not guarantee a federal antitrust damages claim of last resort.[8]
To the contrary, indirect purchasers like Plaintiff are barred from seeking damages
even if they "may have been actually injured by antitrust violations" and even though
"direct purchasers sometimes may refrain from bringing a treble-damages suit for
fear of disrupting relations with their suppliers." *Illinois Brick*, 431 U.S. at 746; *see,
e.g.*, *Merican*, 713 F.2d at 968-69 (indirect purchaser lacked standing even though
direct purchaser executed an affidavit stating it had not suffered any injuries from
the alleged overcharges). Under the well-settled rule of *Illinois Brick*, indirect
purchasers' alleged injury "doesn't give them an antitrust ca[u]se of action."
*Motorola*, 775 F.3d at 823; *see, e.g.*, *Warren Gen.*, 643 F.3d at 91 (rejecting "the first
*harmed*" exception) (emphasis in original).

Finally, none of Plaintiff's other allegations can save his Complaint. Plaintiff
contends that if he cannot bring a Section 4 damages claim, "then no U.S. victim can
do so." Compl. ¶ 66. That is both false and irrelevant to the application of the direct-
purchaser rule. Right now, before this very Court, there are three pending antitrust

---

[8] Plaintiff's allegation that he may assert a Section 4 claim because he is "the victim[] at the highest level . . . *with statutory standing*" (Compl. ¶¶ 4, 66, 85 (emphasis added)), is a conclusory legal argument disguised as an allegation, and it is entitled to no credit: it merely assumes Plaintiff has statutory standing when he does not. A plaintiff has statutory standing if he "falls within the class of plaintiffs whom Congress has authorized to sue." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). *Illinois Brick* held that indirect purchasers—like Plaintiff—are not authorized to sue under Section 4.

lawsuits against Defendants based on the same allegations brought by three different groups of *U.S.-based* plaintiffs, including individuals who purchased Finished Fragrance Products (like Plaintiff) but seek damages under state-law avenues for relief (unlike Plaintiff).[9]   Plaintiff is also wrong to suggest that the principles of *Illinois Brick* (and *Hanover Shoe*)[10] support "elevat[ing] [him] and the proposed class to the preferred position of 'private attorneys general' to assert Section 4 claims." Compl. ¶ 66; *see id.* ¶ 4. The exact opposite is true. As *Illinois Brick* explained, "the legislative purpose in creating a group of private attorneys general to enforce the antitrust laws under § 4 is *better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them*," even if that "denies recovery to those indirect purchasers who may have been actually injured by antitrust violations." 431 U.S. at 746 (emphasis added). The very point of the bright-line direct-purchaser rule is to create a single, well-incentivized class of plaintiffs—direct purchasers—to vigorously enforce federal antitrust laws. Plaintiff's exclusion from that class is a fundamental feature of the rule, not an oversight that allows Plaintiff to evade *Illinois Brick*.

---

[9] *See supra* at 8-9.

[10] The direct-purchaser rule traces back to *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), in which the Supreme Court held that direct purchasers of overcharged goods may sue for the full "amount of the overcharge" and rejected the defense that direct purchasers lack standing because they "passed on" the overcharges to indirect purchasers. *Id.* at 488-91 & n.6.

19

Accordingly, Plaintiff lacks standing to assert a claim for damages, and the Complaint should be dismissed in full.

## II.  THE FTAIA REQUIRES DISMISSAL BECAUSE THE CLAIM IS BASED ENTIRELY ON ALLEGED FOREIGN CONDUCT

The Complaint should be dismissed for another independent reason: its only purported antitrust claim is based exclusively on Fragrances sold in foreign commerce.  The claim is thus barred by the FTAIA, and no exception to the FTAIA applies.

### A.  The FTAIA Bars Plaintiff's Complaint Because His Claim Is Based Exclusively on Goods Sold in Foreign Commerce

The FTAIA limits the territorial reach of the Sherman Act by providing that it does "not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless" one of two enumerated exceptions apply.  15 U.S.C. § 6a.  As outlined by the Supreme Court, the statute "initially lays down a general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) (emphasis in original).  The FTAIA then "brings such conduct back within the Sherman Act's reach" in instances where the FTAIA's "domestic effects" exception apply: "the conduct both (1) sufficiently affects American commerce, i.e., it has a direct, substantial, and reasonably foreseeable effect on American domestic, import, or (certain) export commerce, and (2) has an

20

effect of a kind that antitrust law considers harmful, i.e., the effect must give rise to a [Sherman Act] claim." *Id.*  In essence, the FTAIA bars all claims arising from purchases made in foreign commerce *unless* they involve "import commerce" and thus fall within the FTAIA's import exclusion, or the claims satisfy the "domestic effects" exception.

Plaintiff recognizes that his claim is based exclusively on goods he purchased that were initially sold in foreign commerce.  *See, e.g.*, Compl. ¶ 4 ("Plaintiff . . . purchased from a foreign entity that suffered its injuries outside the United States.").  In fact, Plaintiff seeks to represent a class that—*by definition*—includes only persons who allegedly suffered harm as a result of Fragrance purchases initially made in foreign commerce by foreign entities.  *Id.* ("Plaintiff, like the class he seeks to represent, purchased *from a foreign entity* that *suffered its injury outside the United States*.") (emphases added).  Thus, Plaintiff's claim relates to foreign trade or commerce and is squarely within the scope of the FTAIA.  And, as described below, neither the "import commerce" exclusion nor the "domestic effects" exception applies, so the FTAIA bars Plaintiff's claim in full.[11]

_____

[11] Allowing the Complaint to survive would also subvert the comity considerations animating the FTAIA.  *See In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d 548, 553 n.6 (E.D. Pa. 2010) ("[T]here are serious concerns about interjecting our antitrust laws—particularly the imposition of treble damages—into foreign transactions.").

21

**B.**    **Plaintiff Does Not—and Cannot—Plausibly Allege That Defendants Were Involved in Import Commerce**

The FTAIA's import exclusion does not apply here. The Third Circuit has repeatedly emphasized that the import exclusion turns on "whether the alleged conduct *by the defendants* 'involved' import trade or commerce." *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 71 (3d Cir. 2000) (emphasis in original); *see, e.g.*, *Animal Sci. Prods. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011) (same); *Turicentro S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 305 n.13 (3d Cir. 2002) (same).[12]    Plaintiff does not (and could not) allege that Defendants imported the Finished Fragrance Products at issue into the United States or targeted imported Finished Fragrance Products with their foreign Fragrance sales; instead, he merely alleges that Defendants sold components abroad to foreign purchasers, which then incorporated an unspecified amount of those components into Finished Fragrance Products. *See* Compl. ¶ 4. All of these steps occurred outside of the United States. In fact, Plaintiff admits that this is a necessary condition to his claim: the Complaint seeks redress only for persons or entities who made purchases from "foreign entities" that "suffered [their] injuries outside the United States," *i.e.*, prior to any importation. *Id.*

---

[12] *Animal Science Products* overruled *Turicentro* and *Carpet Group* to the extent they interpreted the FTAIA to bar subject matter jurisdiction, but cited both cases as examples of how to analyze the import exclusion on the merits. *See Animal Sci. Prods.*, 654 F.3d at 470.

C.    **The Domestic Effects Exception to the FTAIA Does Not Apply**

The Complaint lacks any factual allegations showing that Defendants' conduct had a "direct, substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise" to Plaintiff's claim.  The Complaint's repetition of the exception's statutory text, *see* Compl. ¶¶ 6-7, 26, 63, 83, is a legal conclusion entitled to no weight.  *See Iqbal*, 556 U.S. at 678.  Indeed, as discussed below, Plaintiff's own factual allegations make clear that any purported injuries to himself or the class he seeks to represent are, in some instances, many levels removed from and entirely derivative of any purported foreign harm.  This is the quintessential "ripple effect" on domestic commerce that fails to satisfy the FTAIA's domestic effects test.  *See In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 561 (D. Del. 2006).

1.    Plaintiff Fails to Plausibly Allege a Direct, Substantial, and Reasonably Foreseeable Effect on Domestic Commerce

Plaintiff asserts, without factual support, that the conduct at issue had a "direct, substantial and foreseeable impact on interstate commerce in the United States and its territories," Compl. ¶ 58, and that Defendants "intentionally targeted . . . interstate commerce within the United States and its territories," *id*. ¶ 59.  Such claims are wholly conclusory and contradicted by the facts alleged.

*First*, Plaintiff does not plausibly allege a "direct effect" on U.S. commerce.  A "direct effect" is an "immediate consequence" of the alleged anticompetitive

23

conduct felt in domestic commerce with no "intervening developments." *See In re Intel Corp.*, 452 F. Supp. 2d at 560. Here, the Complaint makes clear that all the relevant alleged conduct took place abroad and did not affect the United States without intervening developments. As alleged, Defendants sold Fragrances overseas to a third-party foreign entity (Dior); Dior used the Fragrances it purchased to make a Finished Fragrance Product—also overseas; and then the Finished Fragrance Product was sold to Sephora USA, which in turn offered it for sale to Fields. Compl. ¶ 7.

Thus, Plaintiff's Sherman Act claim is necessarily based on indirect effects that Plaintiff claims resulted from the purported cartel overseas. Plaintiff even admits that the effect in the United States (if any) would depend on a series of intervening pricing decisions by third parties in the distribution chain. *See id*. ¶ 63 (admitting that the effect on U.S. purchasers would depend on decisions of independent third parties about the "pass-through rate" to purchaser class members of any price increase). Those third parties would have made independent decisions including whether and when to use the Fragrances they purchased to manufacture Finished Fragrance Products; how to price Finished Fragrance Products given market conditions, the costs of other components, and other relevant pricing factors; and where to sell Finished Fragrance Products, including whether to sell them in the United States. As courts recognize, "it is difficult to assess the impact of a price

increase at one level of distribution on prices and profits at a subsequent level," *Motorola*, 775 F.3d at 821—and such difficulties only multiply as links are added to the distribution chain. Plaintiff thus fails to plausibly allege that any price increase he allegedly incurred for the Finished Fragrance Product arose as an "immediate consequence" of Defendants' sale of Fragrances in foreign commerce. *See In re Intel Corp.*, 452 F. Supp. 2d at 560.

*Second*, Plaintiff does not plausibly allege that any U.S. effect of the foreign conduct at issue was "substantial." *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 986 (9th Cir. 2008) ("minor impacts" in the United States do not trigger the domestic effects exception). As an initial matter, the Complaint covers a narrow set of circumstances where a Finished Fragrance Product sold in the United States incorporates Fragrances from one or more Defendants that were initially sold to a third party in foreign commerce and incorporated into the Finished Fragrance Product outside the United States.[13] Compl. ¶ 67. These allegations suggest a very limited effect in the United States, if any. *Cf. Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 856 (7th Cir. 2012) (holding that domestic effect was substantial when complaint alleged that 5.3 million tons of potash were imported into the United States in a single year and prices increased by 600% over

---

[13] As discussed *supra* n.7, Plaintiff's own allegations that he purchased directly from a foreign entity are inadequate.

25

the alleged cartel period).

Plaintiff does not even attempt to allege a substantial U.S. effect.  There is not a single factual allegation detailing either the percentage of total fragrance sales or the total volume of sales that are captured by the Complaint.  Thus, there is no basis for the Court to infer anything about the volume of commerce at issue here, and certainly not that any effects on such domestic commerce were "substantial."  *See Spitz v. Medco Health Sols., Inc.*, No. 10-1159, 2010 WL 4615233, at *2 (D.N.J. Nov. 3, 2010) ("The Court has no duty to conjure up unpleaded facts that might turn a frivolous action into a substantial one.") (citation and internal quotation marks omitted); *United States v. LSL Biotechnologies* ("*LSL I*"), No. 00-529, 2002 WL 31115336, at *6 & n.4 (D. Ariz. Mar. 28, 2002) (domestic effects not substantial even where price increases impacted as much as $250 million of imports annually), *amended* (May 23, 2002)*, aff'd*, 379 F.3d 672, 680 (9th Cir. 2004).

There are also no allegations supporting that fragrance ingredients or compounds sold by Defendants constituted a substantial portion of the Finished Fragrance Product price in the United States.  Plaintiff, and the putative class, seek to recover only for purchases of Finished Fragrance Products that incorporate the allegedly price-fixed fragrance ingredients or compounds as one of their components. Compl. ¶ 67.  Where, as here, an alleged price-fixing scheme impacted only a component part of a final product, courts have found allegations that the price-

26

fixed component "constituted a substantial portion of the final price in the United States" relevant to determining whether the FTAIA's domestic effects test is met. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2018 WL 659084, at *6 (N.D. Cal. Feb. 1, 2018); *see also LSL I*, 2002 WL 31115336, at *6 (finding impact on domestic commerce was not substantial where allegedly price-fixed seeds constituted less than 1% of the price of Mexican tomatoes). But the Complaint includes no such allegations.

*Finally*, Plaintiff fails to plead facts sufficient to meet the "reasonably foreseeable" prong of the domestic effects analysis. This prong of the analysis requires that the allegedly direct and substantial effects on U.S. commerce also be "foreseeable to an objectively reasonable person." *Animal Sci. Prods.*, 654 F.3d at 471 (The "FTAIA's 'reasonably foreseeable' language imposes an objective standard . . . . the relevant inquiry is whether the alleged domestic effect would have been evident to a reasonable person making practical business judgments."). Here, the Complaint rests on bare legal conclusions, which provide no basis to determine what a reasonable person might have foreseen. If anything, the Complaint demonstrates that Defendants' sales were not specifically directed at the United States, but rather at third parties abroad. Finished Fragrance Products like the one Plaintiff purchased could have been sold anywhere in the world, and there is no allegation to suggest that all or even most were sent to the United States. *Cf. LSL I*,

27

2002 WL 31115336, at *6 (domestic effects exception did not apply in part because "not all winter tomatoes grown in Mexico," which incorporated allegedly price-fixed seeds, "are exported to the United States").

Underscoring Plaintiff's failure to plead foreseeable domestic effects is the Complaint's lack of any factual allegations connecting the alleged anticompetitive conduct to the United States. The Complaint does not allege that Defendants took part in any U.S.-based meetings or any foreign meetings in which the United States market was discussed. It does not allege that Defendants reached any anticompetitive agreement in the United States. And it does not allege that any pricing decisions by Defendants—most of whom are based, or have a parent based, overseas—were made in the United States, much less that prices for Fragrances *sold overseas* were set in the United States. The Complaint lists a handful of generic price-related statements, but fails to allege that the announced prices were applicable in the United States. Compl. ¶ 41. And to the extent any geographies are specified at all, Plaintiff relies extensively on the EC's purported investigation of potential impacts in Europe. *Id*. ¶¶ 30, 35, 51.

> 2.  Plaintiff Fails to Allege That Any Domestic Effect "Gives Rise" to His Claim

While the lack of direct, substantial, and reasonably foreseeable effects on U.S. commerce alone requires dismissal, Plaintiff also fails to plausibly allege that any domestic effect "gives rise" to his Sherman Act claim. *See In re Hydrogen*

28

*Peroxide*, 702 F. Supp. 2d at 552-53 (explaining that the FTAIA requires showing proximate causation, and but-for causation is not sufficient).

*Motorola*, discussed above, is a seminal case involving the FTAIA's "gives rise to" prong and is instructive on this issue. 775 F.3d at 818. As explained above, *supra* at 16-17, *Motorola* involved allegedly price-fixed components sold in foreign commerce that were incorporated into finished products which were then sold into the United States. *Id.* at 817. Like Motorola, Plaintiff's claims involve a case of "derivative injury," *id.* at 820, as the alleged injury is entirely derivative of foreign injury purportedly suffered by Dior, LVMH, and/or Sephora, Compl. ¶ 7. *Motorola* makes clear that the FTAIA must be analyzed together with the *Illinois Brick* indirect purchaser standing doctrine. *Motorola*, 775 F.3d at 821-23. Because foreign companies in *Motorola* were the direct purchasers—as is the case here—they were the only parties that could sue for antitrust violations given the *Illinois Brick* direct-purchaser rule. Like Motorola, Plaintiff here is an indirect purchaser of products first sold abroad and brought into the United States by non-Defendants, and thus Plaintiff has no standing to bring a damages claim under the Clayton Act for an alleged Sherman Act violation. *Id.* at 821.

Moreover, to the extent Plaintiff alleges that he should be allowed to stand in the shoes of Dior for its foreign Fragrance purchases—given Dior's alleged lack of standing under U.S. law—such a claim cannot satisfy the "gives rise to" prong

because the alleged antitrust injuries occurred entirely in foreign commerce. Compl. ¶ 7 ("As French companies, LVMH, Dior, and Sephora all suffered their injuries in France."); *see Motorola*, 775 F.3d at 819 (finding the "gives rise to" prong of the FTAIA was not satisfied where "the cartel-engendered price increase in the components and in the price of cellphones that incorporated them occurred entirely in foreign commerce"). *Motorola* emphasized that direct purchaser corporations that chose to incorporate overseas would need to pursue remedies under local laws. *Id.* at 823. Indeed, the FTAIA requires that "the domestic effects must occur first and then proximately cause the foreign antitrust claim." *In re Hydrogen Peroxide*, 702 F. Supp. 2d at 551. Plaintiff cannot meet that standard where the alleged injury occurred ***first*** in foreign commerce, and there is no plausible allegation showing that foreign injury stemmed from any domestic U.S. effect.[14]

---

[14] *See, e.g.*, *Motorola*, 775 F.3d at 819; *In Re Graphite Electrodes Antitrust Litig.*, No. 00-5414, 2007 WL 137684, at *1, 6 (E.D. Pa. Jan. 16, 2007) (finding that the "gives rise to" prong was unmet where foreign direct purchaser plaintiff "does not allege it has purchased any graphite electrodes in the United States domestic market, or that prices for graphite electrodes in the foreign market were set by prices or practices in the domestic market"); *Lotes Co. Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014) (noting that if foreign injury causes U.S. effects, the exception does not apply because "the direction of causation runs the wrong way"); *In re Dynamic*, 546 F.3d at 988 (finding that the "gives rise to" prong was unmet even where global conspiracy included "fixed prices in the United States" because plaintiff had "not shown that the higher U.S. prices proximately caused its foreign injury of having to pay higher prices abroad").

III.   **THE COMPLAINT FAILS TO ALLEGE AN UNREASONABLE RESTRAINT OF TRADE UNDER EITHER THE *PER SE* RULE OR THE RULE OF REASON**

Plaintiff asserts in conclusory terms that the conspiracy he alleges is a *per se* violation of Section 1 of the Sherman Act.[15]  Compl. ¶¶ 79, 84.  Even if Plaintiff had adequately alleged the existence of a Section 1 agreement as required for a conspiracy claim (he has not[16]), his Complaint still must be dismissed because he fails to allege that the agreement constitutes an "unreasonable restraint" of trade. *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 7, 10 (1997) (explaining that while Section 1 ostensibly prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade," only "unreasonable restraints" violate the statute).  Courts typically analyze Section 1 agreements under one of two standards: (1) the *per se* rule; or (2) the rule of reason.  *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885-87 (2007).  The Complaint fails under either standard.

A.   **The *Per Se* Rule Does Not Apply to the Alleged Agreement**

Applying the rule of reason is the "accepted standard" in antitrust cases. *Leegin*, 551 U.S. at 885, 895.  The *per se* rule applies only to a small universe of "manifestly anticompetitive" restraints that "always or almost always tend to restrict

---

[15] Plaintiff's claim purportedly arises under Sections 1 and 3 of the Sherman Act (Compl. ¶¶ 78-85), both of which are analyzed "under the same standards." *Robinson v. Jackson Hewitt, Inc.*, No. 19-9066, 2019 WL 5617512, at *5 n.7 (D.N.J. Oct. 31, 2019).

[16] *See infra* Section IV.

31

competition and decrease output," and "lack . . . any redeeming virtue." *Id*. at 886; *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("*Per se* liability is reserved for only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.") (citation and internal quotation marks omitted). Those categories primarily include so-called "naked restraint[s]" among competitors "with no purpose except stifling of competition." *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 20 (1979). Thus, courts decline to characterize conduct as *per se* unlawful where "the economic impact . . . is not immediately obvious." *Leegin*, 551 U.S. at 887; *Broad. Music*, 441 U.S. at 19 n.33 ("[T]he *per se* rule is not employed until after considerable experience with the type of challenged restraint.").

Recently, in *Winn-Dixie Stores, Inc. v. Eastern Mushroom Mktg. Coop., Inc.*, the Third Circuit affirmed a district court's application of the rule of reason to a "unique hybrid scheme" involving defendants with varying degrees of vertical integration and who would have required cooperation at multiple levels to effectuate an alleged price-fixing agreement. 89 F.4th 430, 435 (3d Cir. 2023).[17] As the Court

---

[17] The plaintiff had "forfeited" the argument that "the *per se* rule should apply to the [challenged] conspiracy," instead arguing that "an intermediate standard" called "[t]he quick-look approach" should govern. 89 F.4th at 438, 442 n.7. Nonetheless, *Winn-Dixie* expressly addressed how courts should apply both the *per se* rule and the quick-look approach. *Id.* at 440 (asking whether the challenged "scheme or

explained, "the interplay between the vertical and horizontal components of [the alleged] scheme muddies the theoretical economic conclusions that a court might draw." *Id*. at 441. And the Third Circuit determined that it was impossible to bifurcate the vertical and horizontal aspects of defendants' relationships given their "complex business arrangements." *Id*. at 440. Other courts within and outside of the Third Circuit have also held that certain arrangements with intertwined horizontal and vertical components must be evaluated under the rule of reason. *See, e.g.*, *United States v. Brewbaker*, 87 F.4th 563, 576, 579 (4th Cir. 2023) (recognizing that when a challenged restraint does not "fit neatly into either the horizontal or vertical definition," but instead "fits into both," it may be classified as a "hybrid restraint" that carries "a presumption in favor of the rule of reason"), *cert. denied*, 145 S. Ct. 544 (2024); *Black Box Corp. v. Avaya, Inc.*, No. 07-6161, 2008 WL 4117844, at *17 (D.N.J. Aug. 29, 2008) (applying rule of reason analysis to arrangement involving horizontal and vertical relationships); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 6322383, at *14 (E.D. Pa. May 26, 2015) (applying the rule of reason "to the entirety of plaintiffs' claim" because the court could not "untangle the vertical and horizontal aspects of the conduct of the integrated defendants").

---

portion of the scheme" was "sufficiently akin" to arrangements addressed in past cases "to warrant *per se* or quick-look condemnation").

33

As in *Winn-Dixie,* Plaintiff's own allegations depict an arrangement with "interrelated and variable parts" that is not "sufficiently akin to the horizontal arrangement[s]" analyzed in past cases "to warrant *per se* . . . condemnation." 89 F.4th at 440. Plaintiff alleges that Defendants both compete with each other in the sale of Fragrances to third parties (a horizontal relationship) *and* buy Fragrances from and sell Fragrances to each other (a vertical relationship). *See* Compl. ¶ 30 ("Defendants often sell Fragrances to each other."); *see also id.* ¶¶ 53, 55. Plaintiff further pleads that these customer-supplier relationships are integral to the alleged horizontal relationship, allegedly "provid[ing] a structure for Defendants to . . . redistribute gains and losses among themselves to maintain compliance with the alleged agreements." *Id.* ¶ 55. His allegations also reference the "particularly high" "level of interdependence and solidarity" among Defendants, including their ostensible ability to "threaten not to sell . . . ingredients" to rivals that compete aggressively. *Id.* ¶ 30. And Plaintiff describes Defendants as "vertically integrated into the raw materials that they use to produce Fragrance Ingredients and in their ability to combine those into Fragrance Compounds for sale." *Id.* ¶ 43. Because such linked horizontal and vertical components are "dissimilar from" the *per se* arrangements analyzed in previous decisions, courts "lack 'considerable experience with the type of restraint at issue'" and must "revert to the rule of reason." *Winn-Dixie,* 89 F.4th at 439-40 (discussing previous decisions that involved "a purely

34

horizontal conspiracy" and a "hub-and-spoke" conspiracy, neither of which are alleged here).

Plaintiff's repeated conclusory labels of "price-fixing" cannot overcome this conclusion.[18]   It is well established that such conclusory labels are merely "legal conclusion[s] couched as . . . factual allegations" and need not be "accept[ed] as true."  *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *In re Allergan ERISA Litig.*, 975 F.3d 348, 355 (3d Cir. 2020) (allegation that "Allergan and several of its pharmaceutical industry peers colluded to fix generic drug prices in violation of federal antitrust laws" was "not well-pled" and was a "conclusion[] entitled to no deference").

## B.   <u>Plaintiff Fails to State a Rule of Reason Claim</u>

Under the rule of reason, Plaintiff must allege that "the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market."  *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) ("*Amex*").  To do so, Plaintiff must provide an "accurate definition of the relevant market" to "measure [Defendants'] ability to lessen or destroy competition."  *Id.* at 543; *see also Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.").  Plaintiff must also plead anticompetitive effects, which he can do in two ways:

---

[18] *See, e.g.*, Compl. ¶¶ 12, 44, 53, 56.

with direct evidence, or "proof of actual detrimental effects . . . such as reduced output, increased prices, or decreased quality in the relevant market," or with indirect evidence, or "proof of market power plus some evidence that the challenged restraint harms competition." *Amex*, 585 U.S. at 542 (cleaned up).

Plaintiff does none of that. The Complaint alleges only that the purported agreement is *per se* unlawful, and lacks any factual allegations sufficient to satisfy any of the rule of reason's requirements. He does not identify and define any relevant market, let alone do so "with reference to the rule of reasonable interchangeability and cross-elasticity of demand" as required in the Third Circuit. *Queen City Pizza, Inc.*, 124 F.3d at 436-37 (collecting cases). Nor does he allege any discrete anticompetitive effects in those markets flowing from the purported agreement. These flaws are fatal. *See, e.g.*, *Dagher*, 547 U.S. at 7 n.2, 8 (holding that "antitrust claim [could] not prevail" because the challenged conduct "d[id] not fall within the narrow category of activity that is *per se* unlawful under § 1 of the Sherman Act" and noting that plaintiffs "ha[d] not put forth a rule of reason claim"); *In re Ins. Brokerage*, 618 F.3d at 317 ("While pleading exclusively *per se* violations can lighten a plaintiff's litigation burdens, it is not a riskless strategy. If the court determines that the restraint at issue is sufficiently different from the *per se* archetypes to require application of the rule of reason, the plaintiff's claims will be dismissed.").

36

## IV.    PLAINTIFF FAILS TO PLEAD THE EXISTENCE OF A SECTION 1 AGREEMENT

Plaintiff's claim fails for the additional and independent reason that he fails to allege the existence of an agreement. Defendants believe the arguments made in their joint motion to dismiss the Consolidated Actions hold true here because of the similarities in the allegations at issue. In recognition of this Court's prior decision declining to dismiss the Section 1 claim pending resolution on a fuller record, Defendants will not repeat the same arguments here. *See In re Fragrance Direct Purchaser Antitrust Litig.*, 2025 WL 579639, at *7-9. Defendants respectfully submit, however, that new developments since the Court's prior decision, and the reasoning of that prior decision itself, provide additional reasons why Plaintiff's Complaint fails to plead the existence of a Section 1 agreement and should be dismissed.

*First*, the DOJ investigation is now closed without any enforcement actions brought against any of the Defendants. In declining to dismiss the Section 1 claim in the Consolidated Actions, this Court noted that "the existence of the Government Investigations, while not independently sufficient to support Plaintiffs' allegations, . . . weigh[ed] against dismissal." *Id*. at *9. With the DOJ investigation now closed, this factor no longer weighs against dismissal.

*Second*, Plaintiff's allegations here are materially weaker than those on which this Court relied to sustain the Consolidated Action complaints. For instance,

37

Plaintiff does not reference "scholarship analyzing the fragrance industry," plead that "the buy-side of the fragrance market" was unconcentrated, or assert "inelastic demand and a lack of ready substitution" in Fragrance Products—allegations on which this Court relied in the Consolidated Actions. *Id*. Nor does Plaintiff make specific, nonconclusory allegations that Defendants used trade associations or industry events "as the fora in which [they] developed their price-fixing conspiracy." *Id*. at *6. The Court should "disregard [Plaintiff's] naked assertions devoid of further factual enhancement[s]." *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010).

*Third*, a trial court order granting a motion to dismiss on similar allegations—which had not been decided at the time of Defendants' motion to dismiss the Consolidated Actions—is instructive here. In *In re Concrete & Cement Additives Antitrust Litigation*, the district court found that the defendants' alleged price increases were "not sufficiently similar to give rise to an inference of parallel conduct." No. 24-MD-3097, 2025 WL 1755193, at *14 (S.D.N.Y. June 25, 2025) (Liman, J.). There, as here, the alleged price increases were episodic, spanned several years, and lacked sufficient temporal similarity to support—even at the pleadings stage—an inference of parallel conduct. *See id*. at *13-15 (noting that, for over a year, only two of the alleged conspirators announced price increases, and that later in the class period, Plaintiffs "allege[d] only a handful of scattered price

38

increases").

As in *Concrete & Cement Additives*, the generic price statements that Plaintiff cites are spread across many years and lack sufficient temporal similarity to constitute parallel conduct.  In total, the alleged public statements span more than five years and include many multi-month (and sometimes multi-year) gaps.  *E.g.*, Compl. ¶ 41(a)-(d), (g)-(j) (alleging price-related announcements by different Defendants staggered months or years apart from one another); *id.* ¶ 41(d)-(f) (no allegations about Symrise or IFF prices between late 2019 and second half of 2021; no allegations about Givaudan or Firmenich prices between mid-2020 and second half of 2021).  These statements—made at different times, involving different financial metrics, relating to different price levels, responding to different market factors, and discussing different products—do not come close to the level of parallelism required to plead a Section 1 claim.  *See* Compl. ¶ 41(a)-(j); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011) ("allegations f[e]ll far short of demonstrating parallel behavior" with respect to credit terms because defendants "were choosing to decline, decrease, and even increase credit . . . at different time periods"); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1343 (11th Cir. 2010) (affirming dismissal of Section 1 claim based on failure to allege "dates on which distributors moved prices together, or the amounts by which the prices moved").

39

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed.


Dated:  May 8, 2026                              Respectfully submitted,


_s/ Liza M. Walsh_                               _s/ Michael E. Hamburger_
Liza M. Walsh                                    Michael E. Hamburger
Jessica K. Formichella                           **FBT GIBBONS LLP**
**WALSH PIZZI O'REILLY**                         One Gateway Center
**FALANGA LLP**                                  Newark, NJ 07102
Three Gateway Center                             (973) 596-4500
100 Mulberry Street, 15th Floor                  mhamburger@fbtgibbons.com
Newark, NJ 07102
(973) 757-1100                                   Andrew C. Finch (*pro hac vice*
lwalsh@walsh.law                                 pending)
                                                 Michael A. Paskin (*pro hac vice*
Robert Milne (*pro hac vice*                     pending)
forthcoming)                                     **CRAVATH, SWAINE & MOORE**
Martin M. Toto                                   **LLP**
William H. Bave, III (*pro hac vice*)            Two Manhattan West
Gina M. Chiappetta (*pro hac vice*)              375 Ninth Avenue
**WHITE & CASE LLP**                             New York, NY 10001
1221 Avenue of the Americas                      (212) 474-1000
New York, NY 10020                               afinch@cravath.com
(212) 819-8200                                   mpaskin@cravath.com
rmilne@whitecase.com
mtoto@whitecase.com                              *Attorneys for Defendants Givaudan SA,*
william.bave@whitecase.com                       *Givaudan Fragrances Corporation, and*
gina.chiappetta@whitecase.com                    *Custom Essence LLC*

*Attorneys for Defendants Symrise AG,*           _s/ Tansy Woan_
*Symrise Inc., and Symrise US LLC*               Boris Bershteyn (*pro hac vice*
                                                 forthcoming)
D. Jarrett Arp (*pro hac vice*                   Tansy Woan
forthcoming)                                     Evan Levicoff (*pro hac vice*
Mari Grace (*pro hac vice* pending)              forthcoming)
**DAVIS POLK & WARDWELL LLP**                    Thomas J. Smith (*pro hac vice*
1050 17th Street, NW                             forthcoming)


40

Washington, D.C. 20036
(202) 962-7020
jarrett.arp@davispolk.com
mari.grace@davispolk.com

s/ Sean P. McConnell
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
(215) 979-1947
spmcconnell@duanemorris.com
sckulik@duanemorris.com

Arthur J. Burke (*pro hac vice* pending)
Peter M. Bozzo
Christopher Lynch (*pro hac vice*
forthcoming)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4352
arthur.burke@davispolk.com
peter.bozzo@davispolk.com
christopher.lynch@davispolk.com

*Attorneys for Defendants Firmenich SA,*
*Firmenich Inc., and Agilex Flavors &*
*Fragrances, Inc.*

**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
(212) 735-3000
Boris.Bershteyn@skadden.com
Tansy.Woan@skadden.com
Evan.Levicoff@skadden.com
Thomas.Smith@skadden.com

*Attorneys for Defendant International*
*Flavors & Fragrances Inc.*

41