**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN FIELDS,<br><br>Plaintiff,<br><br>v.<br><br>DSM-FIRMENICH AG, *et al.*,<br><br>Defendants. | No. 26-cv-852<br><br>**OPINION** |

**<u>WILLIAM J. MARTINI, U.S.D.J.</u>:**

Before the Court is Defendants[1] Firmenich SA, Firmenich Inc., Agilex Flavors & Fragrances, Inc., Givaudan SA, Givaudan Fragrances Corporation, Custom Essence LLC, Symrise AG, Symrise Inc., Symrise US LLC, International Flavors and Fragrances, Inc.'s (collectively, "Defendants") Motion to Dismiss pursuant to Rule 12(b)(6) (the "Motion"), ECF No. 42, which the Court decides without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated herein, the Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Brian Fields brings this action pursuant to Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, seeking damages for a conspiracy in restraint of trade in violation of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 3. *See* Compl. ¶¶ 1, 24, ECF No. 1. In his putative class action complaint (the "CAC"), Fields alleges the following facts,[2] which are accepted as true for the purposes of resolving the Motion.

---

[1] Judge Allen dismissed DSM Firmenich AG and Firmenich International SA without prejudice and added Firmenich SA as a Defendant on April 21, 2026. ECF No. 25. Additionally, while International Flavors and Fragrances, Inc. ("IFF") joined in the Motion, *see* Defs.' Notice of Mot. 2, ECF No. 42, Plaintiff later filed a motion seeking preliminary approval of a settlement with IFF, which remains pending. ECF No. 71. Consequently, with respect to IFF, the Motion is **ADMINISTRATIVELY TERMINATED** as **MOOT**. *See Campbell v. Prudential Ins. Co. of Am.*, No. 01-cv-5229. 2002 WL 1020811, at *1 n.4 (E.D. Pa. May 17, 2002).

[2] The Court notes that the CAC tracks the same alleged conduct in three consolidated actions pending before this Court, which this Opinion collectively refers to as the "*Fragrance Cases*." *See In re: Fragrance Direct Purchaser Antitrust Litig.*, No. 23-cv-2174, (the "DPP Action"); *In re: Fragrance Indirect Purchaser Antitrust Litig.*, No. 23-cv-3249, (the "IPP Action"); *In re: Fragrance End-User Plaintiff Antitrust Litig.*, No. 23-cv-16127, (the "EUP Action"). For more background, *see Fragrance Cases*, 2025 WL 572827, at *1 (D.N.J. Feb. 21, 2025) (opinion denying Defendants' omnibus Rule 12(b)(2) motion); *Fragrance Cases*, 2025 WL 579639, at *1 (D.N.J. Feb 21, 2025) (opinion denying Defendants' omnibus Rule 12(b)(6) motion). The Court takes judicial notice of docket entries in the *Fragrance Cases* where appropriate. *See Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (per

**a. The Parties**

Defendants are the world's four largest producers of fragrance ingredients and fragrance compounds ("Fragrances"). *Id.* ¶¶ 1-2. Together, they controlled roughly two-thirds of the global Fragrances market during the alleged class period. *Id.* ¶ 43. Defendants sell Fragrances for incorporation into consumer goods like "perfumes, cosmetics, household cleaning products, and soaps ("Finished Fragrance Products")." *Id.* ¶ 2. Fields, a Kentucky resident, purchased a Finished Fragrance Product from Sephora USA, Inc. *Id.* ¶ 7. Fields "did not purchase directly from Defendants." *Id.* ¶ 4.

**b. Substantive Allegations**

On March 7, 2023, the European Commission ("EC") executed "unannounced inspections at the premises of unidentified companies and an association active in the manufacturing and sale of Fragrances that were suspected of engaging in anticompetitive business practices." *Id.* ¶ 34. The EC's investigation uncovered that one of IFF's senior employees intentionally deleted messages "exchanged with a competitor containing business-related information." *Id.* ¶ 36. The United States Department of Justice ("DOJ") later launched its own investigation into similar allegations of anticompetitive conduct and intervened in the *Fragrance Cases*. *See* DPP Dkt. No. 214-1 ("[T]he United States is investigating potential federal criminal charges, including violations of the Sherman Act, 15 U.S.C. § 1, in the fragrances industry"). The DOJ eventually withdrew its intervention in February 2026. *See* DPP Dkt. Nos. 260-61.

According to Fields, Defendants began engaging in parallel price increases as early as January 2018. CAC ¶ 41(a)-(j). This conduct was accompanied by so-called "plus factors," referring to actions "largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action" that may be probative of anticompetitive conduct. *Id.* ¶ 42. They include: (1) the economic nature of the Fragrances industry, *id.* ¶ 43, 46 (noting Defendants' dominance in a highly concentrated market and the high barriers to entry for potential new entrants); (2) the abundance of opportunities for Defendants to collude and exchange sensitive financial information, *id.* ¶¶ 44, 47-52 (describing certain defendants' membership in the International Fragrance Association ("IFRA") and how IFRA meetings created opportunities for Defendants to coordinate pricing strategies); (3) pretextual explanations for Defendants' parallel price increases, *id.* ¶ 45 (stating that Defendants' price increases are "not adequately explained by market factors"); and (4) the sustained elevation of the prices of Finished Fragrance Products since 2022. *Id.* ¶ 56. All of this, Fields asserts, is evidence of a collusive price-fixing scheme.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for a complaint's dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal

---

curiam). For ease of reference, and unless otherwise noted, the Court cites to the docket in the DPP Action where applicable, rather than citing to docket entries that appear in each of the *Fragrance Cases*. It uses the shorthand "DPP Dkt." for such references.

is appropriate only if, after construing all well-pleaded allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint lacks "sufficient factual matter to show that the claim is facially plausible." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citation modified). The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## III. DISCUSSION

Defendants offer multiple arguments why the CAC should be dismissed. *See generally* Defs.' Br., ECF No. 42-1. This Opinion only considers one: that the doctrine of *Illinois Brick* precludes Fields from filing suit under Section 4 of the Clayton Act. *See id.* 11-19 (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)). For the reasons that follow, the Court concludes that pursuant to *Illinois Brick*, Fields lacks antitrust standing to bring his claims.[3]

### a. The Antitrust Statutes

Sections 1 and 3 of the Sherman Act bar any unreasonable restraint on trade or commerce. 15 U.S.C. §§ 1, 3; *see Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 87 (1911). To state a conspiracy claim under Section 1, Fields must show: (1) Defendants acted with a "unity of purpose, a common design and understanding, a meeting of minds, or a conscious commitment to a common scheme"; and (2) Defendants' agreement "imposed an unreasonable restraint on trade." *Cornish-Adebiyi v. Caesars Ent., Inc.*, --- F.4th ----, 2026 WL 2182291, at *3-*4 (3d Cir. July 29, 2026). The Clayton Act, in turn, provides treble damages for "any person who shall be injured . . . by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a).

### b. *Illinois Brick* Doctrine

Despite the Clayton Act's broad language, the Supreme Court in *Illinois Brick* imposed a limit on who can recover damages for antitrust injuries thereunder. *See Warren Gen. Hosp.*, 643 F.3d at 84. *Illinois Brick* established the "Indirect Purchaser Rule," which permits direct purchasers to sue under federal antitrust laws, but not indirect purchasers. *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, No. 93-cv-5148, 2002 WL 31528625, at *3 n.6 (E.D.N.Y. Aug. 21, 2002) (defining an "indirect purchaser" as one who "acquires a product not directly from a manufacturer, but rather from someone else in the chain of distribution"); *Illinois Brick*, 431 U.S. at 728-29; *Apple v. Pepper*, 587 U.S. 273, 277 (2019); *see also Fragrance Cases*, 2025 WL 579639, at *14 (recognizing the Indirect Purchaser Rule). Courts have described this as a "bright-line rule," *e.g.*, *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-cv-6480, 2021 WL 1907501, at *7 (E.D. Pa. May

[3] For the avoidance of doubt, the Court does *not* consider Defendants' argument that the CAC must be dismissed for failure to allege an unreasonable restraint under the *per se* rule or the rule of reason. *See* Defs.' Br. 31. As Defendants note, this exact issue is currently pending before this Court in the *Fragrance Cases*. Defs.' Reply 11, ECF No. 70 (citing DPP Dkt. No. 298).

12, 2021) (citing *Apple*, 587 U.S. at 280), but it is not without its exceptions. *See In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-620, 2017 WL 696983, at *2 (E.D. Pa. Feb. 22, 2017) (describing the "cost-plus," "co-conspirator," and "owned and controlled" exceptions to *Illinois Brick*); *but see Winn-Dixie*, 2021 WL 1907501, at *7 (opining that "the co-conspirator exception is not really an exception at all, but rather describes a situation in which *Illinois Brick* is simply not applicable") (citation modified).

There are three policy rationales undergirding the Indirect Purchaser Rule. *See Illinois Brick*, 431 U.S. at 730-34. They are "(1) facilitating more effective enforcement of antitrust laws; (2) avoiding complicated damages calculations; and (3) eliminating duplicative damages against antitrust defendants." *Apple*, 587 U.S. at 285. Notably, the Supreme Court has instructed that although these policy considerations "may not apply with equal force in all instances, [it is] inconsistent with precedent and imprudent" to deviate from the Indirect Purchaser Rule. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990).

**c. Fields's Antitrust Standing**[4]

Fields does not contend that he is a direct purchaser of Fragrance Products. *See* CAC ¶ 4 ("Plaintiff did not purchase directly from Defendants"). Nor does he plead that any of the recognized exceptions to *Illinois Brick* apply. Thus, whether Fields can sue under the Clayton Act hinges on whether *Illinois Brick* bars him from doing so.

As an indirect purchaser, Fields's suit falls squarely within *Illinois Brick*'s ambit. Courts uniformly hold as much. *See, e.g.*, *Warren Gen. Hosp.*, 643 F.3d at 88. While this Court previously held in the *Fragrance Cases* that certain indirect purchasers had antitrust standing, that was because those indirect purchasers "d[id] not seek damages for federal antitrust law violations," but instead availed themselves of the laws of those states that permit damages actions from indirect purchasers (*i.e.*, states with *Illinois Brick* repealers). *Fragrance Cases*, 2025 WL 579639, at *14, *16. To the extent Fields invites this Court to carve out an exception to *Illinois Brick*—*e.g.*, to allow actions by indirect purchasers when direct purchasers cannot sue, *see* Pl.'s Opp'n 18, ECF No. 64; or to hold that *Illinois Brick* should not bar cases brought by the "first U.S. purchaser" to suffer an antitrust injury, *see* CAC ¶ 7; Pl.'s Opp'n 4—the Court declines to do so. *See Apple*, 587 U.S. at 285 ("[T]he bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois Brick* apply with equal force in every case") (citation modified); *Warren Gen. Hosp.*, 643 F.3d at 86 (describing the Supreme Court's "unwillingness to recognize any exceptions to [*Illinois Brick*]"); *Hu v. BMW of N. Am., LLC*, No. 18-cv-4363, 2021 WL 346974, at *3 (D.N.J. Feb. 2, 2021) ("[C]ourts must apply the indirect purchaser rule to all cases regardless of whether those rationales are applicable in a particular case").

---

[4] "Antitrust standing is 'something of a misnomer' in that it requires more than ordinary Article III standing: 'For a party to have "antitrust standing," it must do more than satisfy the familiar three-party test for standing.'" *Fragrance Cases*, 2025 WL 579639, at *13 (citing *In re Processed Egg Prods. Antitrust Litig.*, 881 F.3d 262, 268 (3d Cir. 2018)).

Nonetheless, Fields advances a series of arguments supporting why, in his view, *Illinois Brick* is not fatal to his claims. The Court addresses each in turn.

First, Fields argues that "[i]f he cannot sue for [Defendants' alleged antitrust violations], then no one can." Pl.'s Opp'n 18; *see also* CAC ¶¶ 4, 7 (stating that the company from which Fields purchased the Finished Fragrance Product is a subsidiary of a foreign entity that "suffered its injuries outside the United States and therefore lacks standing to bring a Section 4 claim for damages").

The Court is skeptical. Three antitrust class actions based on identical conduct—the *Fragrance Cases*—are pending before this Court. *See In re: Fragrance Direct Purchaser Antitrust Litig.*, No. 23-cv-2174; *In re: Fragrance Indirect Purchaser Antitrust Litig.*, No. 23-cv-3249; *In re: Fragrance End-User Antitrust Litig.*, No. 23-cv-16127; *see also* ECF No. 1-1 (Plaintiff's civil cover sheet naming the *Fragrance Cases* as related actions). This alone disproves Fields's theory that granting the Motion would endorse a misinterpretation of *Illinois Brick* that will "operate[ ] entirely to preclude market recovery for an injury." Pl.'s Opp'n 17 (citing *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 483 (7th Cir. 2002)). For the interim, however, the Court will assume without deciding that Fields is correct that if he cannot sue, then no one can.

To be sure, one of the policy aims of the Indirect Purchaser Rule is to promote the orderly enforcement of antitrust laws. *Apple*, 587 U.S. at 285. Accordingly, Fields's argument that the Indirect Purchaser Rule should yield when direct purchasers do not sue under the antitrust laws perhaps enjoys some intuitive appeal. But courts have considered the possibility that direct purchasers may choose not to file suit and have applied the Indirect Purchaser Rule regardless. *See, e.g.*, *DiMartino v. BMW of N. Am., LLC*, No. 15-cv-8447, 2016 WL 4260788, at *5 (D.N.J. Aug. 11, 2016) ("[T]he fact that direct purchasers may choose not to institute antitrust actions of their own does not establish an exception to the *Illinois Brick* rule") (citation modified). The Supreme Court contemplated this in *Illinois Brick* itself. *Illinois Brick*, 431 U.S. at 746 ("We recognize that direct purchasers may refrain from bringing a treble-damages suit for fear of disrupting relations with their suppliers").

While these precedents weigh in favor of applying *Illinois Brick*, Fields's argument here is slightly different. Rather than contending that the Indirect Purchaser Rule should not apply when direct purchasers *choose* to forego litigation, Fields argues that it should be inapplicable when direct purchasers *cannot* file suit. Pl.'s Opp'n 18-19. Even when accounting for this nuance, courts have still applied the Indirect Purchaser Rule. *See Warren Gen. Hosp.*, 643 F.3d at 95 ("[E]ven if we agreed that the [direct] purchaser was *unable* or unwilling to bring suit, that conclusion does not necessarily weigh in favor of giving the indirect purchaser standing") (emphasis added); *Winn-Dixie*, 2021 WL 1907501, at *9 (applying *Illinois Brick* where direct purchasers' putative claims were time-barred); *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1464 (6th Cir. 1988), *cert. denied*, 488 U.S. 880 (1988) (applying *Illinois Brick* where direct purchasers could not sue); *Drug Mart*, 2002 WL 31528625, at *9 (applying *Illinois Brick* where some direct

purchasers agreed to release any potential claims against the defendant manufacturers). Fields does not cite to any case law—nor is this Court aware of any—that holds otherwise. Again, as described above, the Supreme Court has admonished courts against creating any exceptions to *Illinois Brick*. *See, e.g.*, *UtiliCorp*, 497 U.S. 199 at 217 ("[E]ven assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case, we think it an unwarranted and counterproductive exercise to litigate a series of exceptions").

Second, Fields argues that he is not seeking an exception to *Illinois Brick*, but instead, "an application of [*Illinois Brick*] by concentrating the injury in him—the most direct victim of the conspiracy with statutory standing." Pl.'s Opp'n 18 (emphasis omitted). Regardless of how Fields may choose to characterize his arguments, the Court declines to deviate from the well-established Indirect Purchaser Rule under these circumstances. *See Warren Gen. Hosp.*, 643 F.3d at 84. Indeed, the Third Circuit has rejected similar arguments that purport to confer standing on indirect purchasers who are the "first injured party in the chain of distribution." *See id.* at 91.

Finally, Fields argues that instead of applying the Indirect Purchaser Rule, this Court should employ the five-factor test articulated in *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519 (1983) ("*AGC*") to determine whether he has antitrust standing. Pl.'s Opp'n 18. Fields correctly notes that this Court previously conducted an *AGC* analysis and found that consumers in *Illinois Brick* repealer states plausibly alleged antitrust standing. *Id.* 18-19 (citing *Fragrance Cases*, 2025 WL 579639, at *15-*17). The Court's prior *AGC* analysis does not control its inquiry here because it applied only to indirect purchasers in *Illinois Brick* repealer states. *See id.* at *14. Fields's home state, Kentucky, has not passed an *Illinois Brick* repealer statute,[5] as he concedes. Pl.'s Opp'n 22; *see Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 436 (E.D. Pa. 2010) (concluding that Kentucky courts have determined that indirect purchasers cannot sue under Kentucky antitrust laws). Even assuming *arguendo* that Fields could satisfy *AGC*'s balancing test, *AGC* does not operate to displace the Indirect Purchaser Rule. *See In re Mushroom*, 2017 WL 696983, at *5 ("[E]ven after its decision in [*AGC*] the Supreme Court has declined to depart from application of [*Illinois Brick*]"). Fields's claim thus fails in any event.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. An appropriate order follows.

Date: August 17, 2026

**WILLIAM J. MARTINI, U.S.D.J.**

[5] The Court further disagrees with Plaintiff's assertion that this somehow weighs in favor of relaxing the Indirect Purchaser Rule. *See* Pl.'s Opp'n 22-23.